Mr. Ding, whenever you're ready. Good morning. Good morning, Your Honors, and may it please the Court, Frederick Ding for Appellant Sound View Innovations. The District Court's decision rests on three related and incorrect rulings on claimed scope. None of those issues is independent of the others. As the summary judgment order illustrates, those issues were all woven together explicitly by the District Court. What is that? Just as a practical matter, I don't want to, you know, we only have limited time. What if we were to question the sequence of reading the limitations in that order and we were to disagree with the judge? Is that sufficient to dislodge the summary judgment? I think that this Court should rule on all of the claimed construction issues because the District Court said, I can't figure out if it's a buffer unless it's allocated in the way and in the sequence that I'm construing. So I think this Court does need to address the other issues underlying. Let me try to clarify this. As I understood it, there were two separate grounds for granting summary judgment of non-infringement. Number one is that the Method Claim 16 imposes an order on the arrangement of the steps and they have to be done as they appear, or at least for the first two steps. And that's ground one. Then ground two is the defendant's products do not allocate a buffer as required by the claim because the buffer has to be some kind of specialized buffer. So isn't it true that you have to win and overturn both of those grounds in order to undo the summary judgment decision? Yes, Your Honor. We do have to prevail on both this order of steps issue and on whether the accused products can satisfy the allocating of buffers. So then to put a finer point on it, if we were to agree with the District Court on one of those two grounds, then that would be enough for an affirm of the appeal. Is that right? I think that is correct. If one of those issues this Court affirms the holding of the District Court, that would be correct. So then therefore, wouldn't it be fair to say we as a Court do not need to necessarily get to every single issue? The only reason I disagree with that, Your Honor, is that this patent is also asserted in another litigation. So beyond just whether this Court's constructions will resolve the dispute in the Gulu case, it may also matter to the litigation against Dish and Sling in the Colorado District. So for that reason alone, it would make sense for this Court to rule on the correctness of the District Court's constructions, even if this Court agrees with one and disagrees with another. I'm sorry to keep asking questions here. Did the Colorado District Court adopt the constructions made here by CDCAL? The Colorado Court has stayed that litigation and requested briefing on both parties from what the effect of this appeal will be. So both parties agree that— Wait. Is that—I'm sorry to interrupt, but is that the case where there's an ex parte re-exam going on that grew out of that? Because there's an ex parte re-exam going on with Dish, right? I don't believe—there may also be an ex parte re-exam with Dish. That's true. Involving this patent? Involving different claims of this patent, not Claim 16. Okay. There's no re-exam undergoing for Claim 16? There was a previous re-exam, I believe, and I think that's concluded. All right. So the claim survived? The claim survived. Okay. I'd like to address the order of steps issue, because Your Honor has signaled that we should turn to this issue. The applicants were very deliberate when they drafted this patent. They were very deliberate in how they worded Claim 16, just as they were deliberate in how they wrote orders of steps into other claims. And I think that this is not a pure matter of claim differentiation. It's a matter of the applicants knew how to require an explicit order, and they did so. And I think that Claim 16, there's no doubt that it has to cover the embodiment of Figure 7b, and that's why I go back to first principles generally in claim construction. It would be incorrect to construe a claim in a manner that excludes the preferred embodiment, or even, in this case, the only embodiment of that claim. Well, I think first principles would be to look at the text of the claim itself, right? Looking at the claim language. I agree, Your Honor. We should look at the claim language. We need to. We need to. But as the briefing has illustrated, it's not a clear-cut question on whether the grammar taken in isolation necessarily requires allocating after the request. I mean, the first step says receiving a request for an SM object, right? Yes. And then, just to cut the second step down, it says allocating a buffer to cache at least a portion of said requested SM object, right? Yes. So, obviously, there's an antecedent basis there. It refers back to the SM object in the first limitation. But it says more than that. It says requested SM object. And so, that's a past tense usage of the word request. It's a past tense adjective for SM object. And past tense adjectives describe the state or condition of a noun resulting from a past action. Am I understanding that correctly? Past tense adjectives? I don't believe that a past participle necessarily requires that that be performed first. To give an analogy, if we say that we're allocating a warehouse to store goods ordered by customers, that doesn't mean that the customer has to order the goods before we build the warehouse or select the warehouse. It just means that by the time we are storing the goods, that's the second verb in that step. I'm not sure I can keep track of your shipment hypothetical. How about my hypothetical? There's a radio station. They play a million different songs. I'm a longtime listener. But now I'm about to be a first-time caller. And I'm going to ask for a particular song to be played. Hey Jude by the Beatles. You know that song, right? So now I'm going to ask for that song to be played. So that song has now become a requested song. And so if the radio station allocates a particular time period, 3.15 p.m., to play that song, doesn't the fact that it's a requested song mean that it's something distinct from the other million songs at the radio station? There's no dispute that the requested song differentiates it from the other songs. And necessarily, to be a requested song, there had to be a request. I think we have to go back to what the allocating step says. I'm sorry. I'm so fixated on my hypothetical. Let me address your hypothetical, Your Honor. If we're saying that we're allocating a time slot to play songs requested by a caller, that would be the pertinent hypothetical here. We can decide that we're putting in a time slot to play the specific songs that a customer or caller to the radio station is requesting before you actually get the call. In particular, if your next claim step is saying, now playing the song that was requested, which is exactly what's going on in Claim 16. The decision of when we do the allocating is a different point in time than when we actually play the song. That's the next action that Claim 16 recites. Another concern I have is that this claim uses the phrase said requested SM object multiple times. Yes, it does. And it seems to me this claim would have operated just fine if it had merely said said SM object. That is not the case. Why did the patent drafter choose to, instead of saying said SM object over and over again, it kept saying said requested SM object? Because the word requested disambiguates which SM object we're referring to. The first time SM object appears in Claim 16 is in the preamble. It appears again with an indefinite article in the first claim step. And by using the word requested to refer back to that first step, it's making clear that all those three claim steps that use the said requested SM object are all pertaining to the same SM object. So it's only to identify which said SM object we're referring to as opposed to that of the preamble. So said is doing all the work here? I mean, what if it said at least a portion of the requested SM object? Would that change the translation? If we simply wrote the requested SM object, I don't think that changes it. I don't think it's a said versus the issue. What work is said doing then? I mean, the is a more natural word than said. Said has some meaning, correct? Of course it does. Said means we're linking back up to the previously used antecedent. But there's two possible antecedents here. There's one in the preamble and there's one in the request step. So the two words together, said requested, makes clear... The preamble says having a content server which hosts streaming media objects. Yes. So I guess to my concern, the first step says NSM object and then the rest of the steps refer to said requested SM object. It seems like it would have been just fine to say said SM object and we would know you'd be referring to NSM object in the first step and not the content server which hosts streaming media objects in the preamble. That very well could have been a way to draft the claims. I want to bring this to the Altiris case which I think is comparable. In Altiris, there was a first claim step that said reading a boot selection flag and a subsequent step that said setting said boot selection flag. And despite the fact that it used this antecedent reference, this Court reversed the district court's construction requiring the order of steps despite the fact that the only embodiment in the Altiris patent was one that did it in that order because an antecedent looking at it in that way alone is not the test. So you're saying Altiris stands for the proposition that just because subsequent steps use the term said that's not enough to lock in an ordering of the claimant there. Is that right? I think that's right because Altiris says we have to then look at what the purpose of the invention is. And the same is true of the Interactive Gift Express case. In Interactive Gift Express, the Court was especially moved by the fact that the specification has an embodiment that performs it in a different order. And I think that's what brings us to the Figure 7B embodiment in this case. During prosecution, that's Appendix 925 and 926, the applicant said support for the applicant's invention as claimed in Claim 16, that's found in that embodiment. And so when the district court at Appendix 23 said, if the embodiment contradicts my construction, the embodiment is irrelevant. I have to focus only on the language of the claims. I think that's overstating the law. The law has never said that we need to disregard the embodiments if they're in tension with construction. Rather, the applicants clearly were thinking of how to claim that particular embodiment. They refer to it in prosecution, and when this Court addressed the first appeal in Hulu 1, this Court looked at that single buffer embodiment as well, the Figure 7B embodiment. And when we look at the description in Column 8, it says that buffer's already there. It already holds the data for this particular requested SM object. It's strange language in the specification at Column 8. It is assumed that there is data of K1 seconds in the buffer. I don't know, it didn't say we're allocating a buffer to have all in this first portion of an SM object. I readily concede that that description does not use the verb allocate by itself. But there's no question that that very buffer which is used for the downloading and concurrently retrieving has to be the allocated buffer. Because we've been told by this Court in the first construction in affirming the disclaimer that when we do the downloading and concurrently retrieving step, you must use the allocated buffer. And so, therefore, that links those two together. There's no doubt buffer B179 has to be the allocated buffer. I see I'm into my rebuttal time. You are, and I'll always show you your rebuttal time. Let me ask you one more housekeeping question. What happens if we were to vacate the summary judgment? What's left of this case? Validity comes back alive. There are live validity issues which I assume have been mooted out by this but would come back to life. What else is left in this case? It's just a matter of the trial. I actually don't know if there's any live validity issues remaining, but that was one of the counterclaims that would be subject to revival. Yes. Okay. Thank you, Your Honor. Thank you. Mr. Berg, whenever you're ready. Good morning, Your Honors, and may it please the Court. My name is Brad Berg, and I'm representing the appellee Hulu LLC. Do you happen to know about – your friend referred to the fact that there was an ex parte re-exam pending, and that's been completed involving DISH. Do you happen to know anything about that? No, I'm not involved with that knowing much. I want to start today with a question that Judge Chen asked about the grammar of Claim 16 and whether the grammar of Claim 16 clearly indicates an order of steps. Because I think the grammar of Claim 16 and the logic of Claim 16 is clear that an order of steps is required. Claim 16 has two – the first two limitations of Claim 16 are site receiving a request for an SM object from one of said plurality of clients at one of said plurality of helper servers. And the second step is allocating a buffer at said plurality – at one of said plurality of helper servers to cache at least a portion of said requested SM object. The district court construed allocating a buffer as attaching a requested SM object to a buffer and filling the buffer with data for the SM object. Your brief doesn't address filling the buffer construction and you have a footnote on that saying it's irrelevant because the district court didn't find that your technology failed to meet that limitation. If we conclude that allocating a buffer doesn't require filling the buffer, wouldn't that also render the attaching a requested SM object to a buffer incorrectly construed? So I think as your Honor noted, we didn't challenge this filling the portion of a buffer. I do think that the filling portion of a buffer is supported by the specification that the judge I think has reasoning for why that's included. But the key part is the attaching part. And it's key in the sense that the judge was recognizing that the allocating a buffer is doing some particular work. It's associating – it's the way that the buffer is associated with a particular SM object. And the judge used that attaching language that comes from column 10 as a way of illustrating that feature of allocating a buffer. I don't think – I think that the filling is another thing that happens simultaneously with the attaching, but is a separate piece that the judge saw was happening with the allocating step. So I think these are two separate pieces. And I think the critical thing here is in Hulu's summary judgment brief, we argued that the allocating step wasn't met by the configuration and the initialization that SoundView points to under the plain and ordinary meaning. We don't think a construction is actually required to affirm on the construction of – or on the ground that there's no allocation, which we see as separate grounds from the ground that there's no buffer and from the order of steps. The district court didn't adopt that rationale though, right? Which rationale? The rationale you just seemed to articulate as separate rationale for why you don't believe there's infringement. I think there's four independent rationales in the district court's order. I think the first one that the district court touches on is the construction of buffer and whether or not the accused caches in the edge servers can be buffers. And that comes in two limitations. It comes in the allocating and buffer limitation. It also comes in the downloading while concurrently retrieving limitation, which this court previously construed or affirmed the district court's construction that it requires the same buffer to do both. So I think the district court's first ground is that buffer ground. And then I think there are three separate grounds in the allocating and you can see that on Appendix 24 where the district court is talking about the allocating limitation. And there, the district court starts with a paragraph that says first and talks about the order of steps as one ground. Then the district court has a paragraph that says second and talks about the construction, applying the construction of allocating that it does the attaching and filling. And then the district court has a paragraph that says furthermore the configurations the plaintiff contends constitute allocating a buffer are not based on a request for a particular SM object. Rather, the evidence shows the configurations are based on a particular customer. I read that part of the district court's order as saying even setting aside the order of steps, even setting aside the construction of allocating, there's separate language in the claim, the said requested SM object. The buffer is allocated for a particular purpose to cash a portion of said requested SM object. And even setting aside those other things, this is an independent ground that the district court found. Well, my understanding of the district court's application of his claim construction was that he believed that the term buffer refers to some kind of specialized buffer that can only handle, receive, download data from a particular SM object. Is that right? Yeah, that's correct. And so then all this other analysis kind of launches off of that. I agree that... And so now, I mean, I know we started on ordering, but let's just stay here on buffer.  Let's assume for the moment I have no idea how he arrived at that conclusion that a buffer as used in the claim must be this specialized unique buffer dedicated to only one function, and that is dealing with only a particularized SM object. I mean, that goes against the well-established meaning of what a buffer is. A buffer is, I'm sure you would agree, is a well-known term of art here in the world of networks and data transfers. Yeah, so the district court looked at the language of the claim and saw that in the allocating step and in the downloading while concurrently retrieving step, the same buffer was associated with the SM object and indicated that was one reason that this was supported. Then the district court looked at the specification and attempted to determine what the plain meaning of buffer is in the context of the specification. In the specification, it's very clear that a buffer is only allocated in response to an SM object. It can then serve... But since the specification actually used the word only, that's the key word in this question. Can it only be storing information with respect to one SM object? I didn't see the word only in the specification. Could it be other SM objects as well stored on the same buffer? I agree with Your Honor that the word only is not used. As to your question, Judge Wallach, as to whether it could be other SM objects, the answer is no. And that's because it would undermine the entire purpose of the patent to associate a single buffer with multiple SM objects. The patent, and the district court notes this, is all about addressing what the patent calls the heterogeneity of requests, meaning requests for the same SM object from multiple clients at different times. And so in that context, the invention of the patent is how do we use the existing storage, helper servers existed, helper servers had memory, to most efficiently get these SM objects that are being requested, the same SM objects, to the client. Supposing the user is a news organization, and the SM object is a portion of a speech by the president. And they're pretty confident that lots of people are going to say read that, read about it, and then want to see it. And so they, in advance, store that SM object in the buffer, waiting for the rush of all the customers. Why isn't that a logical approach? So, unless I misunderstand your Honor's question, I think we're talking about the order of steps now, and whether or not the buffer can be pre-allocated. In your example, there's not multiple SM objects stored in the same buffer, correct? Right, there's just one. So I think what that goes back to is the plain language of Claim 16, and the said requested. Is it technologically feasible or plausible to pre-allocate a buffer? I think that is a technologically plausible explanation. But it's not supported by the plain language of the claims, with the said requested SM object explicitly referring back to... So now we're at the sequencing again. What do you say to Figure 7b, which figures prominently in your friend's argument? Yeah, so that's what I was just going to get to. Once we see that there's a plain meaning in the claim language, then we look to the specification to see if anything would have this court deviate from what the plain language of the order of steps is. And my friend Mr. Ding has pointed to Figure 7b, and talked about Figure 7b. And the important thing about Figure 7b, as Mr. Ding acknowledged, is that it simply doesn't talk about allocating. There's a buffer, and it's talking about a particular aspect of the invention, data transfer rate control, which is how you manipulate the data once it's in the buffer. And as a result, it focuses specifically on that issue, of how you manipulate the data, how you send it out, how you get it back in, how you get it to the client as quickly as possible. But it never talks about allocating. It never uses the word allocating. And so someone looking at this embodiment, and trying to understand Claim 16, would know that you've got to go somewhere else for allocating. It doesn't make any sense to say the entirety of the written description for Claim 16 must be in the data transfer rate control embodiment, where a step of Claim 16 is specifically allocating, and the data transfer rate control never talks about allocating. And so the person with skill in the art would look at the other examples in the specification, which do explain allocating. And in particular, I think, would go to Column 6, where there's a paragraph that says, and this is in Line 36 of Column 6, the method of allocating a ring buffer in the memory of an HS is now described with reference to Figure 4. And goes through, in that paragraph, in specific detail, how a buffer is allocated. A ring buffer. Yeah. So it's a different embodiment, I guess, is the concern. There's a few different embodiments in this stack. And then we try to look at all of the claims of this pattern and see which claims most neatly track with the different disclosed embodiments. And it really feels like Claim 16, in terms of best fit, would be this Column 8 data transfer rate control. Whereas the claims that come before Claim 16 really track this ring buffer with the client request aggregation scheme. And then the remaining claims really go after this RTSP embodiment. Yeah, so absolutely, the third and fourth limitations of Claim 16, the downloading while concurrently retrieving and the adjusting data transfer rate limitations, come from the embodiment in Column 8, where Figure 7b is. But the earlier steps, I don't think, come from that embodiment, and can't come from that embodiment, because it doesn't describe allocating. And I think I want to push back on the idea that these three embodiments are three separate embodiments. The patentee's pretty clear in Column 4 that these embodiments are techniques meant to be implemented by a helper server together. We go to Column 4, starting at Line 53. It says, to overcome these drawbacks and further enhance the ability of existing caching systems to properly scale, in terms of an object size, number of supported streams, illustrative embodiments of the present invention advantageously combine three methods, which are implemented via a novel system architecture to enhance existing caching systems. And then it lists proxy caching, client request aggregation, which is the ring buffer, and data transfer rate control, which is the Column 8 disclosure. And so I think looking at this combination of embodiments language, it's perfectly natural to look at Claim 16 and say, I get the written description for downloading while concurrently retrieving and adjusting a data transfer rate from Column 8, from the 7b embodiment. And I get the written description for under what circumstances and when an allocation of a buffer happens from looking at the other embodiments, because these are all to be implemented together. And in fact, every time the patent talks about allocating a buffer, whether it's in the ring buffer embodiment, or in the RTP, RTSP embodiment, which are the two places where it talks about allocating a buffer, it's always in response to a request for an SM object. I need to cut you off, just because your time's almost up. I have one further question, which is that the argument made in the briefs, I think, is that there's a, I don't know if we call it claim differentiation, but in statutory construction, as you know, we look to other things that are said and how they are said. And you've got Claim 16, where it's very fastidious in terms of outlining what the steps are. It's very specific. Claim 13, I'm sorry. So how do we, why shouldn't we look at that in connection with 16, and what they meant, whether they meant to have sequencing in the order? Yeah, I think that the work done by said requested SM object is the same work that's done in Claim 13 by, I think it's upon... Upon receiving said first request. Upon receiving said first request. I think the work done by those two is equivalent. I don't see any reason why said requested SM object is less clear than upon receiving said request. I think the patent... A little less. It's different, certainly, but I don't see any reason that that would make us say, or should compel this court to say that the language in Claim 16 itself isn't clear. What about the prosecution history statement, where for support for Claim 16, they pointed right at Figure 7B? Yeah, that's a great question, Your Honor. In the prosecution history part that's cited in the appendix, this is after the Claim 16 had been rejected over the DeMoney reference that this court talked about at length in the previous appeal. And in response to that rejection, the applicant added the downloading while concurrently retrieving step and explained that that downloading while concurrently retrieving was the invention, and then points to Column 8 as providing support for the invention, which was the downloading and concurrently retrieving step that was added. I don't read the prosecution history anywhere as saying that all the written description for Claim 16 needs to come from that column, but rather the added portion that was added in response to the rejection comes from that column, and that's where the written support for that limitation comes from. And final question. If we were to agree with the district court that the claim imposes an order, a sequence of the claim limitations, but then also say we reject the construction of buffer and the court's application of the buffer to these products, would you be fine with that? Because we would ultimately be affirming. I mean, I think that the buffer construction should be affirmed, but obviously if you have... I think any one of these foregrounds is independent, and affirming on any one of them is sufficient for summary judgment here. Thank you. Thank you. Thank you, Your Honors. The common premise underlying all of the district court's constructions is this idea that you must use a dedicated buffer that can hold only one SM object. And that is on its face, not supported by the intrinsic evidence. It's not the type of limitation that we can read into a claim. And on this point, I think the case GE Lighting versus Agilite is very instructive. There, too, the patent claim used a well-understood term from which the inventors did not depart from the customary meaning as used in the art. And here, as the Hulu One opinion recognized, there is already a well-understood meaning of the word buffer. And nothing in the specification teaches that the buffer needs to be limited in the manner that the district court and Hulu have proposed. But more than that, once the district court began with this incorrect premise that a buffer must be so dedicated, that forced its error in understanding what the allocating a buffer limitation means. And it forced the error on the order of steps. And I think that Judge Wallach's popular speech example illustrates exactly what's going on. As the 796 patent, another one of the inventor's inventions, shows you can pre-allocate buffers for popular content. That's a very logical thing that was known at the time, and it's exactly what you would do with helper servers. The 796 patent has a very similar description, uses two of the same figures as the 213 patent, and that shows us how a person at ordinary skill understood the allocation of buffers. I do think this case goes back, inevitably, to the Figure 7b embodiment. Mr. Berg's argument assumes that it's okay for a claim like Claim 16, that the applicants were clearly thinking of how to cover that embodiment, to nevertheless, that embodiment would not infringe the claim. And that's something that we don't usually see in claim construction. Cases like Interactive Gift Express tell us that if there's an embodiment that performs it in a different order, we should try to read the claims in order to reach that embodiment. And Mr. Berg agreed that in that embodiment, data for that particular SM object was already being held in the buffer of B179, which means, therefore, it must have already been allocated to cache that particular SM object. And I think from those premises, we get to the conclusion that Claim 16, as distinct from Claim 13, Recites an explicit order of steps. And Claim 16, as distinct from Claim 17, where Claim 17 says each buffer is associated with a single SM object, Claim 16 is different. The applicants meant to write Claim 16 differently. They used very particular language, and it's a very simple claim. The language on its own doesn't require a dedicated buffer, and the language on its own doesn't specify an order of steps. So I think from those issues, the three separate constructions that the District Court imposed on the meaning of the buffer, on the order of the steps, and on the requirement that allocating requires filling with data, all three of them are unsupported by the record, and so this Court should reverse. Thank you. Thank you. We thank both sides. The case is submitted.